## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ASHER BRONSTIN,                                    Case No.: 2:26-cv-10001
                                                   Hon. Judith E. Levy
       Plaintiff,                           Magistrate David R. Grand

v

DASH CAPITAL INC.

       Defendant,

_____/

## DEFENDANT DASH CAPITAL INC'S ANSWER TO COMPLAINT INDEX OF EXHIBITS

NOW COMES Defendant, DASH CAPITAL INC., by and through its attorneys, HAMMOUD DAKHLALLAH & ASSOCIATES PLLC and for its ANSWER TO PLAINTIFF'S COMPLAINT INDEX OF EXHIBITS, hereby states as follows:

| Exhibit | Description |
|---------|-------------|
| A | MEMORANDUM RE: PLAINTIFF'S REQUEST FOR DEFAULT JUDGMENT AND SANCTIONS (23-cv-00361-MMB, ED PA) |
| B | MEMORANDUM (19-cv-04228-GAM, ED PA) |
| C | Opencorporates.com search for "control one smart homes" |
| D | Recording of August 19, 2025 call between Asher Bronstin and Mike Moussawel of Dash Capital Inc. |
| E | August 19-20, 2025 email thread between Asher Bronstin and Mike Moussawel of Dash Capital Inc. |
| F | August 19-20, 2025 text message thread between Asher Bronstin and Mike Moussawel of Dash Capital Inc. |

| G | Entire Call log between Mike Moussawel of Dash Capital Inc. and Asher Bronstin |
| H | August 20, 2025 email thread between Asher Bronstin and Mike Moussawel of Dash Capital Inc. (delivery of Cease and Desist) |
| I | August 25, 2025 email thread between Asher Bronstin and Tarik D. Turfe (Authorization to Communicate) |
| J | August 25, 2025 email thread between Asher Bronstin and Tarik D. Turfe (Delivery of Notice of Authorization to Communicate) |

Respectfully submitted:

/s/ TARIK D. TURFE
KASSEM DAKHLALLAH (P70842)
TARIK D. TURFE (P83690)
**HAMMOUD, DAKLALLAH & ASSOCIATES, PLLC**
Attorney for DASH CAPITAL
6050 Greenfield Rd, Ste 201
Dearborn, MI 48126
(313) 551-3038
Date: January 28, 2026                    tt@hdalawgroup.com

## PROOF OF SERVICE

I hereby certify that on January 28, 2026, I electronically filed the foregoing paper with the clerk of the Court using the ECF system which will send notification of such filing to counsel of record

/s/ Tarik D. Turfe
Tarik D. Turfe (P83690)

2

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW PERRONG,<br><br><br>                                    Plaintiff,<br><br>v.<br><br><br>DVD II GROUP, LLC and KEVIN KNASEL<br><br><br>                                    Defendants. | CIVIL ACTION<br><br><br>NO. 23-361 |

<u>MEMORANDUM RE: PLAINTIFF'S REQUEST FOR DEFAULT JUDGMENT AND SANCTIONS</u>

Baylson, J.                                                                        May 3, 2023

We all remember the old adage, "The pot can't call the kettle black." Although its origin is not known, it applies to this case.

### I.       SUMMARY OF FACTS, HISTORY OF SERVICE, AND BRIEFING

Plaintiff Andrew Perrong brings an action pro se for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Pennsylvania Telemarketer Registration Act, 73 P.S. §§ 2241-49, against DVD II Group, LLC and Kevin Knasel (together, "Defendants"). Complaint (ECF 1). Plaintiff, a habitual litigant with extensive familiarity with the TCPA and court proceedings, has appeared before this Court in similar, but unrelated, actions. <u>See</u> <u>Perrong v. Atom Property Solutions</u>, 22-cv-2000 (E.D. Pa. Nov. 30, 2022) (Baylson, J.) (awarding civil judgment to Plaintiff pursuant to a request for default judgment).

As is often required to initiate a legal action, Plaintiff hired a service processor to serve the Complaint on the Defendants. Notice of Service (ECF 5). On March 13, 2023, the Defendants

were served by the service processor.  Plaintiffs' Resp. Ex. 2 (ECF 8-2).  On March 14, 2023, Mr. Haskins, counsel for Defendants, contacted Plaintiff informing Plaintiff that Mr. Haskins was authorized to waive service on the Defendants.  Def. Opp. (ECF 7) at 2.  According to Plaintiff, during a phone call later on March 14, Mr. Haskins allegedly informed Plaintiff that the Defendants had not yet been served.  Pl. Resp. (ECF 8) at 2.  Plaintiff provided Mr. Haskins with waiver of service forms on March 14; Mr. Haskins filled them out on March 15 and returned them to Plaintiff on March 20.  Def. Opp at 2.  However, on March 15, after receiving an invoice from his service processor, Plaintiff realized that the Defendants had already been served prior to Plaintiff's conversation with Mr. Haskins.  Pl. Resp. at 2; Pl. Resp. Ex. 2.

Unilaterally determining that Mr. Haskins' alleged comment about Defendants not having been served was a lie,[1] Plaintiff then became so "upset" that he ignored all further communication with Mr. Haskins for several weeks (Pl. Resp. at 3) despite Mr. Haskins repeatedly reaching out to Plaintiff to confirm that Plaintiff had received the signed waiver of service forms and that the Defendants had 60 days (until May 13, 2023) to answer (Def. Opp. at 2).  Instead of communicating with Mr. Haskins to resolve the issue or informing Mr. Haskins that he believed Defendants' answer was due on April 3, 2023 rather on May 13, 2023, Plaintiff, still "upset," waited in silence for the April 3, 2023 deadline to pass and then filed a Request for Default Judgment.  Def. Opp. at 2; Request for Default J. (ECF 6); Pl. Resp. at 3.

Defendants filed a Brief in Opposition to Plaintiff's request, arguing that they are not in default because they had until May 13, 2023 to answer due to the waiver of service.  Def. Opp.

---

[1] Plaintiff does not seem to account for the possibility that Mr. Haskins, like Plaintiff, did not become aware of the service on March 13 until after the phone call on March 14.  Indeed, Defendants indicate this is exactly what happened.  Def. Reply (ECF 9) at 2.

(ECF 7) at 3. The Clerk of Court did not enter default judgment. Docket, <u>Perrong v. DVD II</u> <u>Group, LLC</u>, 23-361 (E.D. Pa.) (dates between April 4 and April 13, 2023) (Balyson, J.).

Plaintiff responds, arguing that Defendants' opposition brief is "not justified,"[2] and that he does not oppose allowing the Defendants to answer by May 13, but requests sanctions due to Mr. Haskins' alleged "misconduct in lying about the status of service to Plaintiff." Pl. Resp. (ECF 8) at 1.

Defendants reply, arguing that Defendants' actions and the actions of their counsel were not sanctionable but instead reflected multiple good faith efforts to communicate with Plaintiff. Def. Reply (ECF 9) at 2-3. Defendants argue that Plaintiff's conduct, particularly ignoring Defendants' counsel's e-mails and attempts to communicate, is sanctionable and request that this Court award the Defendants the fees and costs accrued in opposing the Request for Default Judgment. <u>Id.</u> at 3.

## II. ANALYSIS

Given that default judgment was, wisely, not entered by the clerk of court and that both parties agree that Defendants intended to answer, default judgment is not appropriate here. Further, Plaintiff appears to have waived his request for default judgment. Pl. Resp. at 3. Plaintiff's Request for Default Judgment will therefore be denied, and the Defendants will be required to answer, move, or otherwise respond to the Complaint on or before May 13, 2023.

Sanctions against the Defendants and their counsel will be denied. Plaintiff has not shown that Mr. Haskins knowingly lied or attempted "to obtain a waiver of service through false

---

[2] Plaintiff makes much ado about Defendants' ten-page brief, saying that "if counsel for Defendants had even bothered to reach out to Plaintiff, Plaintiff would have . . . granted an extension," and accusing Defendants of "wasting Plaintiff's and this Court's time." Pl. Resp. at 1-2. According to Defendants' Reply, Defendants' counsel did reach out to Plaintiff, but received no reply. Def. Reply at 2-3.

pretenses." Pl. Resp. at 3. Plaintiff seeks $170 in sanctions (the amount he spent on service fees), although he had already hired the service provider before the communication with Mr. Haskins at issue. Id. at 2 (stating that Plaintiff sent the Complaint out for service on March 2, 2023, nearly two weeks before the events at issue). The cost was therefore taken on by Plaintiff willingly – such is the price of bringing legal action, as he well knows given his experience initiating legal proceedings.

Furthermore, the Court finds no misconduct by defense counsel resulting in an unnecessary service fee. If any misconduct exists, it is Plaintiff's decision to act with petulance rather than professionalism by ignoring communications from opposing counsel, filing a request for default judgment despite knowing that Defendants intended to answer, and forcing Defendants to "rack up billables" (Pl. Resp. at 8) in order to oppose Plaintiff's Request for Default Judgment. Plaintiff's behavior is gamesmanship of the lowest order. His status as a pro se litigant may shield him from sanctions for the unnecessary legal fees that he forced the Defendants to accrue. Haines v. Kerner, 404 U.S. 519, 520 (1971) (holding a pro se plaintiff to less stringent standards than trained lawyers). However, Plaintiff does not deserve to benefit from the flexibility usually afforded to pro se litigants. As a law student and habitual litigant with more legal experience, legal knowledge, and legal education[3] than most pro se litigants, Plaintiff did not behave with the level of decorum and respect for this Court and his opposing counsel that he should know is required. Such behavior will not be tolerated by this Court. Plaintiff will be required to show cause as to why sanctions should not be granted in favor of the Defendants.

---

[3] The Court's independent research discloses that Plaintiff is a third-year law student. Perrong v. Total Insurance Brokers, LLC, 8:20-cv-1905, 2021 WL 3036467, at *3 (M.D. Fla. April 2, 2021) (citing Perrong's Declaration (20-cv-1905 ECF 41-1) ¶ 5).

### III.     CONCLUSION

For the foregoing reasons, Plaintiff's Request for Default Judgment shall be **DENIED**. Defendants shall answer, move, or otherwise respond to the Complaint on or before May 13, 2023. Plaintiff's request for sanctions shall also be **DENIED**.  Plaintiff shall provide briefing within fourteen (14) days showing cause as to why sanctions against him are not warranted.

An appropriate Order follows.

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW R. PERRONG    :
           :
   v.        :   CIVIL ACTION NO. 19-4228
           :
REWEB REAL ESTATE LLC, ET AL. :

### MEMORANDUM

McHUGH, J.                August 21, 2020

This is an action brought under the Telephone Consumer Protection Act, (TCPA), 47 U.S.C. § 227, et seq. Plaintiff is Andrew Perrong, a prolific and frequently successful *pro se* litigant in cases brought under the TCPA. Defendants include REWeb Real Estate, LLC, which Plaintiff pleads is incorporated in Florida and operates from offices there, REWeb's two principal owners, and "John Does 1 through 100." (Compl. ¶¶ 7-9.) Plaintiff avers that Defendants conduct business in Bucks and Montgomery Counties, and he further avers that "they purposely avail themselves of the markets in this District, including by purchasing and owning property in this District and/or entering into contracts for the purchase and sale of real property with residents of this District." (Compl. ¶ 5.)

The Complaint was filed on September 12, 2019, the summons apparently served on October 2, 2019, and a default entered by November 6, 2019, followed promptly by a motion to enter judgment on the default. Defendants, also proceeding *pro se*, communicated with the Court by email on November 27, 2019, followed by a *pro se* motion to set aside the default. Defendants' email was docketed.

Mr. Perrong moved to strike the motion to set aside the default, arguing that it was improper in both form and substance, and further moved to strike Defendants initial email

communication to the Court as an improper *ex parte* communication with scandalous content. In an order entered December 5, 2019, I denied the motion to strike Defendants' motion, denied Plaintiff's motion for judgment, and granted the motion to vacate the default. In an order entered December 12, 2019, I denied Plaintiff's motion to strike Defendants' initial email communication from the record, but ordered that it be sealed, and barred Defendants from any further *ex parte* communication with the Court.

Defendants, still proceeding *pro se*, then simultaneously filed an answer denying Plaintiff's allegations in some detail, and a motion to dismiss, asserting a lack of jurisdiction. The motion is conclusory. Nonetheless, a "federal court is bound to consider its own jurisdiction preliminary to consideration of the merits," *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n*, 657 F.2d 29, 35 (3d Cir. 1981), and thus may raise jurisdiction *sua sponte*, *Sun Buick v. Saab Cars U.S.A.*, 26 F.3d 1259, 1261 (3d Cir. 1994). After review of the parties' submission the question of jurisdiction was of sufficient concern that I entered an Order directing Mr. Perrong to set forth in an affidavit the factual basis for his allegations of jurisdiction. He did so, simultaneously filing a motion to strike Defendants' answer on the ground that REWeb, as a corporation, could not defend itself *pro se* but was required to retain counsel. I will not strike Defendants' filing, but instead consider whether jurisdiction is properly vested in this court.

A "court may assert general [personal] jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

To establish specific personal jurisdiction over a defendant, the question is whether the defendant's contacts with the forum are such that the defendant could reasonably foresee being

haled into the forum's courts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "In determining whether minimum contacts are present, courts focus on 'the relationship among the defendant, the forum, and the litigation.'" *Gehling v. St. George's School of Medicine*, 773 F.2d 539, 541 (3d Cir. 1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). On this record, I am not persuaded that sufficient contacts exist. But even when such a showing can be made, the court must still consider whether its assertion of jurisdiction would comport with "traditional notions of fair play and substantial justice." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.*, 75 F.3d 147, 150 (3d Cir. 1996).

As set forth below, there is certainly no basis for general jurisdiction, and the contacts between Defendants and Pennsylvania are marginal. Furthermore, I am not persuaded that subjecting them to jurisdiction here would be consistent with "traditional notions of fair play and substantial justice."

The genesis of this action was Plaintiff's receipt of 3 text messages in a row.[1] The first was addressed to an individual named Devin, with reference to a specific property he owned with an address in Florida. The second message expressed interest in buying other properties in the area, and the third text asked when it would be a convenient time to speak. Plaintiff responded in order to identify the sender, and he received another text asking again when it would be a good time to speak. Plaintiff then ostensibly requested a copy of REWeb's "Do-not-call" policy. Finally, after confirming the telephone number, he called and was connected first to individual defendant Nicholas Umarino and then to defendant Kyle McLaughlin. (Complaint ¶¶ 18-38.) Thereafter, Plaintiff asserted his claim for damages.

---

[1] Defendants allege that it was a single text.

In answering the Complaint, Defendants concede that the texts were sent, but specifically deny that any automatic dialer was used. Rather, they contend that it was sent accidentally to the wrong number as one of their employees was seeking to communicate with the owner of the specific property identified and was using a number found in a published directory. (Defs.' Answer ¶¶ 18-34.) They further deny that their business lacked a "Do-not-call" policy, (*id.* ¶ 34), and attached it as an exhibit to their answer, (*id.*, Ex. A.)

As to the scope of the business, Defendants averred that they limit their activities to Southeast Florida, where they are licensed, and conduct no direct business activities in Pennsylvania. (*Id.* ¶¶ 1-2.) They further identify the specific person whom they were trying to contact and identify him as the owner of a property in Cape Coral Florida, an area in which they regularly do business. (*Id.* ¶ 30.) Their answer further pleads that Plaintiff demanded $7000 in settlement, told them that they would need to hire a lawyer, further stating that his demand would increase if they did not immediately capitulate. (*Id.* ¶37.) Considering the general and often evasive nature of many answers to civil complaints, the specificity and unambiguous nature of the denials stands out.

Plaintiff's affidavit in support of jurisdiction, (ECF 17), is long on argument and short on facts. There is no support for his allegation that Defendants purchase or own homes in this judicial district. He further asserts that they do a "brisk business" in Pennsylvania. (Perrong Aff. ¶ 6.) But the most that Plaintiff can show, citing to REWeb's website, is that Defendants apparently have listed a property in Naples, Florida owned by a Pennsylvania resident. (*Id.*) Plaintiff also asserts that defendant McLaughlin recently sold another property in Naples, Florida to a Pennsylvania resident, but he was acting through a different real estate company. (*Id.*) Plaintiff tries to characterize the text messages he received as evidence that Defendants were

masquerading as investors seeking to buy property in Pennsylvania, but I do not find that to be a reasonable characterization of the texts.

Plaintiff further seeks leave to conduct discovery in support of jurisdiction, (Perrong Aff. ¶ 8.)  Whether to grant such discovery rests within the discretion of the court.  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003).  To justify discovery, a plaintiff asserting jurisdiction must set forth facts that "suggest with reasonable particularity the possible existence of the requisite contacts between [the parties] and the forum state."  *Id*. at 456.  The facts that Plaintiff has advanced here do not justify an inference that allowing discovery will demonstrate a basis for jurisdiction.  In reaching that conclusion, I remain troubled that Plaintiff would unambiguously allege in the Complaint that Defendants conduct business here "by purchasing and owning property" in the absence of any factual support.

I am also guided by my obligations under Federal Rule of Civil Procedure 26 (b)(1), particularly considerations of proportionality and burden.  Plaintiff's motion to strike Defendants' answer was filed simultaneously with his affidavit.  If the motion were granted, it would have the effect of requiring Defendants to expend funds for the retention of counsel.  Similarly, his request for jurisdictional discovery would impose further transactional costs on Defendants.  Both are consistent with Plaintiff's aggressive style of litigation, and a concern arises that this represents a strategy of pressuring these defendants to settle independent of the merits of the case.  This concern on my part is a separate basis on which I deny discovery given the record in this case.

Plaintiff, of course, remains free to pursue his claims and establish the merits of his case, but he must do so in a forum where Defendants are properly subject to personal jurisdiction.  An appropriate Order follows.

    /s/ Gerald Austin McHugh    
United States District Judge

# EXHIBIT C

# opencorporates

The Open Database Of The Corporate World

| Company name or number | Search |

◉ Companies  ○ Officers

- Log in/Sign up

## Found 0 companies

| control one smart homes | Go |

☐ exclude inactive Advanced Options

Your search - control one smart homes - did not match any companies
(Hint: try removing some of the words or leaving out the company type, e.g. Corp, SARL, Inc, etc)
Search Google for 'control one smart homes'

This information comes to you from **OpenCorporates** — the leading authority on legal-entity data

Read more about us and why you should trust this data in our purpose, history and principles

The OpenCorporates website is free for general-public and public-benefit use

Use the OpenCorporates API

License this data in bulk

**OpenCorporates :** legal-entity data done right
Global Authority

- **Unrivalled domain expertise**
- **Driving global policy**
- **Certified B Corp**

Trustworthy data

- **100% official primary sources**
- **Quality baked in**
- **Underpinned by Legal-Entity Data Principles**

Designed for the future

- **Legal-entity data model**
- **For the needs of today and tomorrow**
- **Provenanced, standardized data**

[Learn more](#)

# About us

- About
- Blog
- Team
- Governance
- Jobs

# Using our data

- Our data
- Our purpose
- Legal/Licence
- User/Cookie privacy policy
- Public records privacy policy

# Help

- API Reference
- Glossary
- Status

# Contact

- Twitter
- Medium
- Newsletter
- Problems with our data?
- Temporary redaction

# Impact

- Impact
- Grants

# EXHIBIT D

# EXHIBIT E

 Outlook

---

**RE: Documents needed**

---

**From** Mike Mouss <mikemouss@dashcapitalco.com>

**Date** Wed 8/20/2025 12:45 PM

**To** asher <asher@controlonesmarthome.com>

**Cc** accounting@controlonesmarthome.com <accounting@controlonesmarthome.com>

Hello Asher,

I haven't received documents on this yet. Quick reminder this is all I need below.

- Last four months of business bank statements
- Application * https://signnow.com/s/81DUansA



**Mike Mouss | Director Of Business Financing**
Licensed Mortgage Loan Officer NMLS #2313242

**Address:** 17199 N. Laurel Park Dr. STE 407, Livonia, MI 48152
**Direct:** 313-631-1929 **Mobile:** 734-748-8417 **Fax:** 734-396-1021
**Email:** mikemouss@dashcapitalco.com **|** Website:
www.dashcapitalco.com





This message is intended for the named person's use only. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. The Host System reserves the right to monitor all e-mail communications through its networks. Any views expressed in

this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of any such entity.]

---

**From:** Mike Mouss
**Sent:** Tuesday, August 19, 2025 6:30 PM
**To:** 'asher' <asher@controlonesmarthome.com>
**Cc:** 'accounting@controlonesmarthome.com' <accounting@controlonesmarthome.com>
**Subject:** RE: Documents needed

Hi Asher,

This is a quick reminder of the documents needed to proceed with funding offers.

- Last four months of business bank statements
- Application * https://signnow.com/s/81DUansA



**Mike Mouss** | **Director Of Business Financing**
Licensed Mortgage Loan Officer NMLS #2313242

**Address:** 17199 N. Laurel Park Dr. STE 407, Livonia, MI 48152
**Direct:** 313-631-1929 **Mobile:** 734-748-8417 **Fax:** 734-396-1021
**Email:** mikemouss@dashcapitalco.com I **Website:** www.dashcapitalco.com



 

This message is intended for the named person's use only. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. The Host System reserves the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of any such entity.]

**From:** Mike Mouss
**Sent:** Tuesday, August 19, 2025 12:13 PM
**To:** asher <asher@controlonesmarthome.com>
**Cc:** accounting@controlonesmarthome.com
**Subject:** Documents needed

Hi Asher,

We are excited to assist you in finding the best loan solution for your business. To initiate the process, we kindly request the following initial documents:

- Last four months of business bank statements
- Application * https://signnow.com/s/81DUansA

These documents will enable us to assess your business's financial health and determine the most suitable loan options. If you have any questions or need assistance in gathering these documents, please don't hesitate to reach out.

Thank you for choosing Dash Capital. We look forward to working with you.

Best regards,



## Mike Mouss | Director Of Business Financing
Licensed Mortgage Loan Officer NMLS #2313242

**Address:** 17199 N. Laurel Park Dr. STE 407, Livonia, MI 48152
**Direct:** 313-631-1929 **Mobile:** 734-748-8417 **Fax:** 734-396-1021
**Email:** mikemouss@dashcapitalco.com I **Website:**
www.dashcapitalco.com





This message is intended for the named person's use only. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. The Host System reserves the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of any such entity.]

**From:** asher <asher@controlonesmarthome.com>
**Sent:** Tuesday, August 19, 2025 12:12 PM
**To:** Mike Mouss <mikemouss@dashcapitalco.com>
**Cc:** accounting@controlonesmarthome.com
**Subject:** Test

# EXHIBIT F



🚫 **Asher DNC In Legal 760-...** ›

Text Message • SMS
Tue, Aug 19 at 12:06 PM

Mikemouss@dashcapitalco.com

Wed, Aug 20 at 11:15 AM

Good morning asher, it's Mike Mouss with dash capital. I haven't received the documents from your assistant yesterday. Just wanted to make sure you knew that

You blocked this contact.

# EXHIBIT G

7:28



<                                Edit

A

## Asher DNC In Legal
## 760-▮▮▮▮▮▮

message | call | video | mail | pay

---

August 20, 2025

11:15 AM   **Outgoing Call**
          7 seconds

---

A    Contact Photo & Poster

---

phone RECENT

+1 (760) ▮▮▮▮▮▮

---

Notes

---

Send Message

Favorites    Recents    Contacts    Keypad    Voicemail



7:29

< Edit

**A**

# Asher DNC In Legal 760-███████

message | call | video | mail | pay



**August 20, 2025**

3:27 PM  **Incoming Call** ☑
5 minutes

Calls with a checkmark have been verified by the carrier.

**A**  Contact Photo & Poster

phone RECENT
+1 (760) █████

Notes

Send Message

Favorites | Recents | Contacts | Keypad | Voicemail

# EXHIBIT H

 Outlook

---

**FW: Investigation & Cease and Desist; DASH CAPITAL INC**

---

**From** Mike Mouss <mikemouss@dashcapitalco.com>

**Date** Mon 8/25/2025 5:06 PM

**To** Tarik Turfe <tt@hdalawgroup.com>

📎 1 attachment (163 KB)

Investigation & Cease and Desist -DASH CAPITAL INC.pdf;



**Mike Mouss | Director Of Business Financing**
Licensed Mortgage Loan Officer NMLS #2313242

**Address:** 17199 N. Laurel Park Dr. STE 407, Livonia, MI 48152
**Direct:** 313-631-1929 **Mobile:** 734-748-8417 **Fax:** 734-396-1021
**Email:** mikemouss@dashcapitalco.com I **Website:**
www.dashcapitalco.com







This message is intended for the named person's use only. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. The Host System reserves the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of any such entity.]

**From:** Legal BronstinHoldings <legal@bronstinholdings.com>
**Sent:** Wednesday, August 20, 2025 10:18 PM
**To:** Mike Mouss <mikemouss@dashcapitalco.com>
**Cc:** Admin <admin@dashcapitalco.com>; info@dashcapitalco.com; legal@dashcapitalco.com
**Subject:** Investigation & Cease and Desist; DASH CAPITAL INC

Dear Sir or Madam:

Please see the attached file.

# RAUL M. CORALDE, JR., ESQ.

### ATTORNEY AT LAW

# Investigation & Cease and Desist

08-20-25

Attn: Responsible Individual(s)/Corporate Officer(s)/Registered Agent(s)

Responsible Individual: Mike [Farouk] Moussawel

Entity Name: DASH CAPITAL INC
Registered Agent Name: Mike [Farouk] Moussawel
Registered Agent Address: 17199 N Laurel Park Dr Ste 407, Livonia, MI 48152

Re: Non-Consensual Telephone Solicitations
Complainant: Asher Bronstin
Complainant Number: (760) ███████
Complainant Email: Legal@BronstinHoldings.com

Dear Sir or Madam:

Please be advised that I have been consulted regarding Telephone Solicitations received by the Complainant starting on or around 08-14-25. The communications came from various numbers, including but not limited to:

- 734-748-8417
- 760-756-7569
- 760-931-5797

As outlined in the Telephone Consumer Protection Act (TCPA), it is illegal to initiate a Telephone Solicitation without obtaining prior consent from the party being solicited. To the Complainant's knowledge, consent was not given to your company. Therefore, you are being provided with the opportunity to explain these communications before further legal action is taken. In consideration of the foregoing, formal demand is made:

1. To provide any and all documents, records, or other materials in your possession that evidence consent of any kind from anyone, as well as any and all documents, records, or other materials in your possession that might support an assertion that the aforementioned Telephone Solicitations did not constitute a violation of the TCPA.
2. To furnish a detailed account of the manner, source, and circumstances under which you acquired the Complainant's personal contact information.
3. To produce the following documents evidencing compliance with 47 C.F.R. § 64.1200(d)(1)(2)(3), which you are required to do upon demand, and the noncompliance with which constitutes violation of the TCPA.
   A. Written copy of your internal DNC policy;
   B. Written confirmation that your personnel are trained on this policy; and
   C. Written confirmation that you have added the Complainant to your internal DNC list.

Please reply with the documentation outlined above within five (5) days of this correspondence. Thank you for your prompt attention to this matter.

Respectfully,

*Raul Coralde, Jr.*

Raul M. Coralde, Jr., Esq.

# EXHIBIT

# I

 Outlook

---

**Re: Dash Captial**

---

**From** Legal BronstinHoldings <legal@bronstinholdings.com>

**Date** Mon 8/25/2025 7:18 PM

**To** Tarik Turfe <tt@hdalawgroup.com>

**Cc** Kassem Dakhlallah <kd@hdalawgroup.com>

Yes, you are authorized to respond to me.

On Mon, Aug 25, 2025 at 3:21 PM Tarik Turfe <tt@hdalawgroup.com> wrote:

To Whom it May Concern,

I represent Dash Capital Inc. We received a letter from legal@bronstinholdings.com dated August 20, 2025. Please contact me to discuss further. I note that the name "Raul Coralde Jr." left no contact information. There is no contact information for him online, either.

Thank You,

**Tarik D. Turfe | Attorney**

**Hammoud, Dakhlallah & Associates PLLC**

6050 Greenfield Rd, Ste 201

Dearborn, MI 48126

Phone: (313) 551-3038

Fax: (313) 551-3136



The information contained in this message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender by replying to his/her e-mail address noted above and delete the message. Thank you.

# EXHIBIT

# J

 Outlook

---

**Notice of Authorization to Communicate; DASH CAPITAL INC**

---

**From** Legal BronstinHoldings <legal@bronstinholdings.com>

**Date** Mon 8/25/2025 10:11 PM

**To** Tarik Turfe <tt@hdalawgroup.com>

**Cc** Kassem Dakhlallah <kd@hdalawgroup.com>

📎 1 attachment (157 KB)

Notice of Authorization to Communicate - DASH CAPITAL INC.pdf;

Dear Sir or Madam:

Please see the attached file.

# RAUL M. CORALDE, JR., ESQ.

## ATTORNEY AT LAW

# Notice of Authorization to Communicate

08-25-25

Attn: Concerned Counsel of Individuals and/or Entities listed below

Responsible Individual: Mike [Farouk] Moussawel

Entity Name: DASH CAPITAL INC
Registered Agent Name: Mike [Farouk] Moussawel
Registered Agent Address: 17199 N Laurel Park Dr Ste 407, Livonia, MI 48152

Re: Non-Consensual Telephone Solicitations
Complainant: Asher Bronstin
Complainant Number: (760) ███████
Complainant Email: Legal@BronstinHoldings.com

Dear Sir or Madam:

As you are or should be aware, I have been consulted regarding Telephone Solicitations received by the Complainant, whose number is listed with the National Do-Not-Call Registry, which were unwanted, non-consensual, and therefore illegal. This letter serves as formal written authorization to communicate directly with the Complainant, through the phone number and email address listed above, regarding this specific matter. In consideration of the foregoing, this authorization will be subject to the following limitations:

1. This authorization is granted in the interest of saving all parties the time, trouble, and significant cost of formal legal proceedings. This authorization does not extend to communication on unrelated matters or for any purpose outside the scope defined herein.

2. This authorization is limited in scope and duration, solely for communication related to the above-referenced matter and insofar as the Complainant determines the communication is productive in settling and resolving this matter amicably and expeditiously.

3. This authorization may be revoked by written notice at any time, and does not waive any attorney-client privilege, work product protection, or any other rights or defenses the Complainant is legally entitled to.

Respectfully,

*Raul Coralde, Jr.*

**Raul M. Coralde, Jr., Esq.**